# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 19, 2012

143342

CHARTER TOWNSHIP OF LYON,
       Plaintiff-Appellee,

v

McDONALD'S USA, L.L.C.,
       Defendant,

and

MILFORD ROAD EAST DEVELOPMENT
ASSOCIATES, L.L.C.,
       Intervening Defendant-Appellant.

_____/

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra,
Justices

SC: 143342
COA: 294074
Oakland CC: 2007-083871-CC

## AMENDMENT TO ORDER

On order of the Court, this Court's December 18, 2012 order is amended to read as follows:

On order of the Court, leave to appeal having been granted and the briefs and oral arguments of the parties having been considered by the Court, we hereby VACATE part II.B and the first sentence of part IV of the Court of Appeals May 24, 2011 majority opinion, which are unnecessary to the decision in this case. The appellant's request for relief is DENIED in all other respects.

CAVANAGH, MARILYN KELLY, and HATHAWAY, JJ., concur in the result.

ZAHRA, J. (*dissenting*).

I would reverse the Court of Appeals majority decision and reinstate the trial court's award to defendant-appellant Milford Road East Development Associates, L.L.C. (defendant) of just compensation under the Uniform Condemnation Procedures Act (MUCPA), MCL 213.51 *et seq*., in the amount of $1.5 million.

This case involves review of a verdict rendered after a bench trial in a condemnation action. Defendant is the developer of Lyon Towne Center, located in plaintiff Lyon Charter Township, south of I-96 and east of Milford Road. A related company, Milford Road West Development Associates, L.L.C. (MRWDA) has the same owners as defendant and is the developer of Lyon Crossing, a development also south of I-96, but west of Milford Road. Defendant and MRWDA entered into two nearly

identical planned development agreements with plaintiff to develop the approximately 115 acres of vacant land. The developments were phased developments collectively known as Lyon Centers. Defendant expended approximately $10 million to construct a ring road called Lyon Center Drive to connect Lyon Towne Center and Lyon Crossing and bring public sewer and water service to Lyon Centers. Before the development was completed, plaintiff exercised its right of eminent domain to access these water and sewer lines to benefit a neighboring private property owner.

Claiming that it merely desired "to expand its municipal public services, water and sewer, to that portion of the township north of 1-96," plaintiff asked McDonald's USA, L.L.C., which had purchased a unit in the condominium development, to grant it an easement over its property. When defendant originally sold the unit to McDonald's, defendant, pursuant to the Lyon Towne Center Master Deed and Bylaws, "reserve[d] for the benefit of itself . . . permanent easements to use, tap into, enlarge or extend all utility facilities in the Condominium and servient estates . . . ." Defendant also reserved for itself the right to approve or disapprove all future developments and improvements, including utilities. McDonald's thus refused to grant plaintiff the requested easement.

Plaintiff then filed this action against McDonald's to condemn an easement for permanent subsurface water and sewer utilities under the condominium unit within Lyon Towne Center owed by McDonald's. Defendant moved to intervene, noting that it retained the above-mentioned property rights to the common elements of the Lyon Center under the master deed and bylaws. In response, plaintiff maintained that defendant had no property interest in the affected property and that no common elements are involved. Plaintiff maintained this position throughout the proceedings.

The trial court awarded defendant $1.5 million as just compensation under the UCPA. The Court of Appeals reversed the judgment in a 2-1 decision, concluding in part that the trial court had wrongly awarded damages to defendant for being "outpositioned" in the market place.[1] The Court of Appeals majority further concluded that the trial court's award constituted a "new theory of compensation" that would "seriously hinder future economic growth, particularly in commercial and industrial markets."[2]

Like most condemnation actions, this case is factually intense. Omitted from the Court of Appeals majority opinion are some undisputed facts that plainly influenced the trial court's decision and are, in my view, pertinent to appellate review. For example, the automobile dealership that benefitted from plaintiff's exercise of eminent domain had previously been under contract to purchase property within defendant's development. The object of this contract never came to fruition because plaintiff withheld its approval

---

[1] *Lyon Charter Twp v McDonald's USA, LLC*, 292 Mich App 660, 675 (2011).

[2] *Id*. at 673-674.

to place the dealership within defendant's development. At the same time, plaintiff rezoned nearby property to accommodate placement of an automobile dealership on that property. After the dealership purchased the rezoned property, it was discovered that the land would not percolate water,[3] thereby making it impossible to use septic tanks. The dealership could be constructed in its new location only if the water and sewer lines that defendant had paid approximately $10 million to extend to its property were further extended to the rezoned parcel. Plaintiff was reluctant to exercise its power of eminent domain and agreed to do so only after the dealership and its developer agreed to indemnify and hold plaintiff harmless for its condemnation action. The trial court observed that plaintiff not only prevented defendant from developing its property in accordance with the phased development plan, but also diverted at least two would-be purchasers of property within defendant's development to land that could be developed only because of plaintiff's exercise of eminent domain.

In my view, this Court's order vacating "part II(B) and the first sentence of part IV of the Court of Appeals majority opinion, which are unnecessary to the decision in this case," but otherwise denying relief is troubling for several reasons. The order vacates the portion of the Court of Appeals majority opinion relating to its interpretation of "parcel" under the UCPA but otherwise denies relief and thus, by implication accepts the Court of Appeals majority's conclusion that, even if it had property rights that were affected by the taking, defendant is simply not entitled to just compensation. In my view, while the order properly leaves in place the Court of Appeals majority's determination that defendant has a property interest in the property that was taken, it improperly lets stand the clearly erroneous determination that this property interest was limited because the master deed or bylaws specify that any development was "subject to plaintiff's approval." That plaintiff's approval was required merely acknowledges that plaintiff has the right to regulate all development. Though plaintiff could veto a project approved by the developer, it did not have the right under the master deed or bylaws to compel an extension of the public utilities as done here without paying defendant just compensation. In other words, there is little dispute that defendant possessed property rights under the master deed and bylaws that were affected by plaintiff's taking.

The order also leaves unaddressed the significant issue of defining the "parcel" of property affected by the taking under the UCPA. The UCPA defines a "parcel" as "an identifiable unit of land, whether physically contiguous or not, having substantially common beneficial ownership, all or part of which is being acquired, and treated as separate for valuation purposes."[4] The Court of Appeals majority held that because the "common beneficial ownership between defendant and Milford Road West Development

[3] "Percolating water that oozes or seeps through soil without a defined channel . . . ." Black's Law Dictionary (7th ed), p 1585.

[4] MCL 213.51(g).

Associates is extraneous to the deeds," it "is insufficient to grant an interest in the McDonald's easement to the common owners."[5]  However, as explained by amicus curiae Michigan Chamber Litigation Center,

> [t]he legislature did not limit the relevant 'parcel' for valuation purposes in a condemnation case to the individually deeded lots within a development; instead, it defined the relevant "parcel" to include the development as a whole, so long as it is an "identifiable unit of land" subject to "substantially common beneficial ownership."

The Court of Appeals majority clearly erred by relying on the fact that the "common beneficial ownership between defendant and Milford Road West Development Associates is extraneous to the deeds" to conclude that Lyon Centers is not the pertinent "parcel."[6]  In essence, the Court of Appeals majority engrafted on the definition of "parcel" additional requirements not contained within it.  Property under common, but separate, ownership is often developed in phases, and it is foreseeable that, in future condemnations, a taking from one phase of a commonly owned series of developments may have significant effects on the value of property used in later (or simply other) phases of the development.  The Legislature expressly provided that parcels having substantially common ownership might be deemed to be a single parcel, even when they, as in this case, are not contiguous.

In my view, the erroneous interpretation of the term "parcel" also infected the Court of Appeals majority decision in regard to the amount of just compensation.  On one hand, the Court of Appeals majority "assume[d], without deciding," that Lyon Centers was an identifiable unit of land with common ownership, yet on the other hand held that, because the right of control defendant relied on derived from the master deed for the Lyon Towne Center, which created no rights within Lyon Crossings, defendant could not recover for any impairment of the value of Lyon Crossing.[7]  Had the Court of Appeals majority truly assumed without deciding that Lyon Centers was an identifiable unit of land with common ownership, the Court of Appeals majority would have recognized that the easement within Lyon Centers must necessarily also be subject to common ownership.

Last, and most troubling, is that this Court's order leaves in place a rule of law barring just compensation awards when a condemning governmental entity characterizes a loss of a property's market value as attributable to being "outpositioned" in the market place.  While plaintiff correctly notes that no case directly supports this proposition,

---

[5] *Lyon Charter Twp*, 292 Mich App at 670.

[6] *Id*.

[7] *Id*. at 669-670.

plaintiff concedes that no case directly contravenes this proposition either. Indeed, no Michigan court has previously addressed the question of just compensation under these particular circumstances. However, this does not mean that the trial court abused its discretion by awarding defendant just compensation under these particular circumstances. Instead, one may reasonably conclude that the trial court's award merely compensated defendant for plaintiff's taking of defendant's property rights in a manner that is wholly consistent with the well-established principle that "[w]hen only part of a larger parcel is taken, as is the case here, the owner is entitled to recover not only for the property taken, but also for any loss in the value to his or her remaining property."[8] In other words, although these precise circumstances may never have been addressed by this Court before, or perhaps more likely may never have been specifically identified in the language of "outpositioning," or "lost competitive disadvantage," the broader principles relied on by the trial court have certainly been addressed by this Court on many occasions. Just as traditional principles of free speech apply in a countless array of new circumstances regularly arising in courts throughout the land, e.g., hate crimes, campaign finance restrictions, regulatory prohibitions on commercial speech, antiharassment laws, etc., traditional principles of just compensation apply in a countless array of new circumstances regularly arising in those same courts.

It is well established that the "proper measure of damages in a condemnation case involving a partial taking consists of the fair market value of the property taken plus severance damages to the remaining property if applicable."[9] "The purpose of just compensation is to put property owners in as good a position as they would have been had their property not been taken from them."[10] Accordingly, "the proper amount of compensation for property takes into account *all factors* relevant to market value."[11]

> [A] guiding principle when awarding just compensation in a
> condemnation suit is to "neither enrich the individual at the expense of the
> public nor the public at the expense of the individual" but to leave him "in

---

[8] M Civ JI 90.12.

[9] *Dep't of Transp v VanElslander*, 460 Mich 127, 130 (1999) (citations and quotation marks omitted); see also 13 Powell, Real Property, § 79F.04[3][a], p 79F-66.1 ("The law is well settled that takings of a part of an owner's land require not only that the owner be paid for the portion of the property that is taken, but also for any diminution in value to the property that remains.").

[10] *VanElslander*, 460 Mich at 129 (citations and quotation marks omitted).

[11] *Silver Creek Drain Dist v Extrusions Div, Inc*, 468 Mich 367, 379 (2003) (emphasis added), see also *VanElslander*, 460 Mich at 129 ("Just compensation means the *full* monetary equivalent of the property taken.") (emphasis added) (citations and quotation marks omitted).

as good a position as if his lands had not been taken." Thus, in a partial taking, the formula to calculate the fair market value of the remainder parcel must account for the fact that damages will vary from case to case, depending on the unique circumstances of each taking. Restoring the individual to his position before the taking will require a flexible, case-by-case approach to damages.[12]

Just compensation

"may perhaps depend on the effect which the appropriation may have on the owner's interest in the remainder, to increase or diminish its value, in consequence of the use to which that taken is to be devoted, or in consequence of the condition of the condition [sic] in which it may leave the remainder in respect to convenience of use . . . ."[13]

"In considering the effect of the taking upon the remainder, the after value must take into account the proposed use of the project and the effect of that use upon the remainder."[14] "Damages to the remainder that are to be reasonably anticipated from use of the property for the purpose for which the condemnation is made, are relevant in determining the compensation to be awarded for the taking."[15] "Further, in valuing what is left after the taking, you must assume that the [condemning authority] will use its newly acquired property rights to the full extent allowed by the law."[16] Defendant's appraiser testified that the value of the remainder was reduced by $3 million as a result of the taking.[17] Plaintiff failed to offer an alternative estimate. As mentioned, plaintiff took the position throughout the proceedings that defendant's property rights were not affected by the taking.[18]

---

[12] *Dep't of Transp v Tomkins*, 481 Mich 184, 198 (2008) (citation omitted).

[13] *Tomkins*, 481 Mich at 207, quoting 1 Cooley, Constitutional Limitations (1st ed), p 565.

[14] 4A Nichols, Eminent Domain (3d ed), § 14A.06[3], p 14A-127.

[15] *Id*. at 14A-129.

[16] M Civ JI 90.12.

[17] See 13 Powell, § 79F.04[3][b][ii], p 79F-66.2 ("[s]everance damages equal the difference between the value of the entire tract before the taking and the value of the remainder after the taking.").

[18] It should be noted that plaintiff did argue that any property interest was not affected because, as a practical matter, the water and sewer lines would be installed underground with directional boring and would not disrupt the surface of the property. Plaintiff obviously cannot support the proposition that property rights are only affected by a physical disruption to the property.

Further, the Court of Appeals majority wholly failed to apply the correct standard of review in this case. A trial court's award of just compensation is reviewed for an abuse of discretion: "The amount of damages to be recovered by the property owner is generally left to the discretion of the trier of fact after consideration of the evidence presented."[19] "The determination of value and just compensation in a condemnation case is not a matter of formula or artificial rules, but of sound judgment and discretion based upon a consideration of all of the evidence . . . ."[20] An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes.[21] The standard is only once mentioned by the Court in a passing reference to *Oakland County Board of County Road Commissioners v Bald Mountain West*,[22] in which the Court of Appeals held that the trial court did not abuse its discretion by admitting the defendant's appraiser's testimony. The Court of Appeals majority in this case simply did not review the trial court's decision to determine whether the trial court had abused its discretion. Rather, the Court of Appeals majority struck down the trial court's decision as a matter of law even though, as mentioned, no Michigan court has previously addressed the question of just compensation under these circumstances.

The trial court relied on the principles discussed earlier and the Michigan Civil Jury Instructions to calculate the award. M Civ JI 90.12 provides that, in valuing property left after a partial taking, the fact-finder should take into account the following factors:

> (1) its reduced size, (2) its altered shape, (3) reduced access, (4) *any change in utility or desirability of what is left after the taking,* (5) the effect of the applicable zoning ordinances on the remaining property, and (6) *the use which the* [*condemning authority*] *intends to make of the property it is acquiring and the effect of that use upon the owner's remaining property.*[23]

The trial court applied these factors in arriving at its award.

Only defendant submitted evidence to the trial court regarding just compensation. Defendant's appraisal expert did not base his opinion on the increased value of the

---

[19] *VanElslander*, 460 Mich at 129.

[20] M Civ JI 90.05.

[21] *People v Babcock*, 469 Mich 247, 269 (2003).

[22] *Oakland Co Bd of Co Rd Comm'rs v Bald Mountain West*, unpublished opinion per curiam of the Court of Appeals, issued February 14, 2008 (Docket No. 275230).

[23] Emphasis added.

otherwise useless land owned by the dealership. Rather, the expert focused on the value of defendant's parcel. The expert concluded that defendant's parcel was reduced in value by $3 million as a result of the taking. Significantly, the trial court noted that plaintiff submitted no alternative appraisal report. In determining the value after the taking, defendant's expert accounted for the loss of desirability, loss of marketability, the purpose for which plaintiff was going to use the property taken (to create a commercial enterprise on property that otherwise could not be developed), and the effect of that use on the owner's remaining property. The expert opined that the remaining unsold and unoccupied property in defendant's development directly suffered as a result of the act of governmental taking.

As a consequence of the Court of Appeals majority decision, and our limited action here, defendant, whose property rights were undisputedly taken by the government, receives nothing. For this reason, I question the Court of Appeals majority's conclusion that affirming the award in favor of defendant "would seriously hinder future economic growth, particularly in commercial and industrial markets."[24] What developer will invest multiple millions of dollars to develop unused land knowing that the government can take the developer's property rights to the benefit of a private sector competitor without compensating the developer for the resulting diminution in the value of the property?

Further, I question the validity of the Court of Appeals majority's policy argument that "[t]o allow an award for lost competitive advantage would be to allow the first developer in a geographic area to monopolize real estate by placing unreasonably high cost barriers for competitors to tap into public utility lines."[25] First, the competitor ran the risk that public utility lines would not be available when it purchased

---

[24] *Lyon Charter Twp*, 292 Mich App at 673-674.

[25] *Id*. at 675.

property for which the competitor believed it would not need to tap into public utility lines. Second, the competitor here did not negotiate the extension of public utilities with defendant. Rather, the competitor unilaterally lobbied plaintiff to condemn an easement. Third, any monopolization of public utility lines could have been avoided had plaintiff at all indicated a desire to extend those public utility lines north of I-96 through Lyon Centers. Plaintiff expressly agreed to a submitted "utility and grading plan," a "storm water management" plan, and various other design documents incorporated within the planned development agreements. There is no evidence that any of these documents considered the possibility of extending utility lines outside of Lyon Crossing. Only after defendant installed utility lines at significant cost to benefit its condominium units and the condominium project in general did plaintiff consider extending the utility lines in this manner. In my view, plaintiff was in the best position to prevent any so-called monopolistic effect by negotiating the extension of utility lines over private property in the planned development agreements.

After taking these property rights, plaintiff in essence gave these rights to a private entity, no doubt with the expectation of generating additional tax revenue for the very taking it had facilitated. All this was done while being indemnified and held harmless by the private entity that benefitted from plaintiff's actions. The trial court did not err by concluding that Lyon Centers was the relevant parcel and that defendant had property rights that were affected by plaintiff's taking. Further, the trial court did not abuse its discretion in awarding defendant just compensation. I would reverse the judgment of the Court of Appeals and reinstate the trial court's judgment.

MARKMAN and MARY BETH KELLY, JJ., join the statement of ZAHRA, J.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 19, 2012 _____    _____
Clerk

t1217